IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>STEVILLE D. BURNS,<br><br>Defendant. | 8:23-CR-96<br><br>MEMORANDUM AND ORDER ON OBJECTIONS TO FINDINGS AND RECOMMENDATIONS ON MOTION TO SUPPRESS |

The Government has charged defendant Steville D. Burns with possession with intent to distribute 500 grams or more of methamphetamine and 400 grams of fentanyl. Filing 21 (Indictment). This charge stems from the defendant's encounter with law enforcement on March 23, 2023, at a traffic stop on I-80 near Gretna, Nebraska, where law enforcement uncovered approximately 25 pounds of methamphetamine and 31,000 fentanyl pills in the defendant's vehicle. The defendant filed a Motion to Suppress, Filing 44, that the United States Magistrate Judge recommended be denied, Filing 87. Presently before the Court are the defendant's objections to the magistrate judge's Findings and Recommendation. Filing 94. The defendant contends suppression is appropriate because law enforcement prolonged the defendant's detention to allow the canine sniff without reasonable suspicion. Filing 94 at 1–2. For the reasons stated below, after reviewing the matters *de novo*, the defendant's objections are overruled, the magistrate judge's Findings and Recommendation are accepted, and the Motion to Suppress is denied.

1

## I. BACKGROUND

### A. Factual Background

The magistrate judge's Findings and Recommendation discusses the facts pertinent to the defendant's Motion in greater detail. *See* Filing 87 at 1–4. The following background information provides context for the Court's ruling on the defendant's objections.[1]

Omaha Police Officers Jeffrey Vaughn and Aaron Anderson, officers involved in the defendant's traffic stop, testified at the suppression hearing. Filing 86 (Transcript). On March 23, 2023, around 12:55 PM, Omaha Police Officer Aaron Anderson observed the defendant driving east on I-80 in Nebraska near mile marker 430 in a 2022 GMC Terrain with Colorado rental plates. Filing 86 at 63. Officer Anderson consulted his computer and discovered that the vehicle being driven by the defendant had an expired registration—undisputedly a traffic violation—and relayed this information to Officer Jeffrey Vaughn, another officer patrolling I-80. Filing 86 at 66–67. Officer Vaughn, having been apprised of the defendant's expired registration, waited in his patrol vehicle with his drug dog at the center emergency median near mile marker 436 for the defendant to pass. Filing 86 at 17. Officer Vaughn ran the defendant's plates to ensure the registration was expired then stopped the vehicle around mile marker 438 at about 1:04 PM. Filing 86 at 18.

Upon approaching the vehicle, Officer Vaughn observed a duffle bag in the rear cargo seat area, multiple cell phones, and several food wrappers from different companies. Filing 86 at 19. In response to a question about his travels, the defendant told Officer Vaughn that he was coming from the outlet mall to the west. Filing 86 at 20. But Officer Vaughn noted that Officer Anderson

---

[1] The Court has reviewed the video footage presented at the Motion to Suppress hearing conducted by the magistrate judge and the transcript of that hearing. Filing 82. In the Findings and Recommendation, the magistrate judge accurately recounted the facts presented by the video footage and by the testimony at the suppression hearing.

initially saw the defendant to the west of the outlet mall, meaning the defendant's origin "was farther west" than the Gretna, Nebraska outlet malls, meaning the defendant's statement to Officer Vaughn could not have been true. Filing 86 at 20. Officer Vaughn testified he "had reasonable suspicion [of criminal conduct] at this point." Filing 86 at 21–22.

After asking the defendant where he was coming from, Officer Vaughn requested that the defendant exit the vehicle and sit in the patrol vehicle. Filing 86 at 22. There, Officer Vaughn showed the defendant that his registration was expired, which the defendant acknowledged. Filing 86 at 22–23. For about two minutes, Officer Vaughn asked the defendant "routine questions about who the person is, criminal history, [and] travel plans." Filing 86 at 24–25. Officer Vaughn repeated certain questions during this conversation, including variations of "How are you doing?" three times and "Is your license suspended?" twice. Filing 92 at 6–7. Officer Vaughn then ran the defendant's information "through the data center . . . to check to see if it was a valid driver's license and if [the defendant] ha[d] any warrants." Filing 86 at 24. While the data check was processing, about six minutes after the initial traffic stop, Officer Vaughn "deployed his police service dog to utilize a free-air sniff of the vehicle," and the dog alerted and indicated to the odor of narcotics in the defendant's vehicle. Filing 86 at 26. Officer Anderson then arrived at the scene of the traffic stop and performed a search of the defendant's vehicle, pursuant to the drug dog's positive alert and indication of narcotics. Filing 86 at 30. The search uncovered approximately 25 pounds of methamphetamine and approximately 31,000 fentanyl pills. Filing 86 at 30.

Later, after the defendant had been arrested and his vehicle taken to the impound lot, a body camera picked up a comment by Officer Vaughn referring to the defendant as "homeboy." Filing 86 at 54. At the evidentiary hearing, Officer Vaughn admitted that the comment was in

reference to the defendant's race. Filing 86 at 54. But Officer Vaughn also testified that the defendant's race was not a factor in stopping the vehicle, stating, "I would prefer to not have traffic violations where I make contact with black motorists just because I've been sued under circumstances where I was alleged for racial profiling. So I try to avoid that." Filing 86 at 55.

### B. Procedural Background

The defendant was indicted on April 19, 2023, for possession with intent to distribute 500 grams or more of methamphetamine and 400 grams of fentanyl. Filing 21 (Indictment). The defendant filed a Motion to Suppress on September 1, 2023. Filing 44. The magistrate judge held a suppression hearing on December 6, 2024, Filing 81 (Text Minute Entry), and issued a Findings and Recommendation that the Motion be denied on January 8, 2025, Filing 92. The defendant filed his objections on January 21, 2025. Filing 94. The defendant asserts a single ground for suppression: law enforcement prolonged the defendant's detention to allow the canine sniff without reasonable suspicion. Filing 94 at 1–2.[2]

### II. ANALYSIS

### A. Applicable Standards

Under the Federal Rules of Criminal Procedure, the Court "must consider de novo any objections to the magistrate judge's recommendation." Fed. R. Crim. P. 59(b)(3). The reviewing

---

[2] Defense counsel specifically stated at the suppression hearing,

> I'm not contesting probable cause to initiate the traffic stop. I'm not contesting that once the dog alerts and indicates that the officer has probable cause to search. It's what happens in between those times. So once the traffic stop is initiated and then once the point in time in which the officer either stalls or expands the traffic stop that is for an expired registration.

Filing 86 at 91. Defense counsel further clarified that the asserted basis for suppression is "not the length of the traffic stop in total; it's whether or not our officer crossed a line in terms of making the traffic stop last longer than it needed to by stalling or expanded what his scope was allowed to be based upon the reason for the stop." Filing 86 at 93.

4

district court judge is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). A party's failure to object in accordance with Rule 59 "waives a party's right to review." Fed. R. Crim. P. 59(b)(2).

Under *de novo* review, a reviewing court "makes its own determinations of disputed issues and does not decide whether the magistrate[ ] [judge's] proposed findings are clearly erroneous." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). *De novo* review is non-deferential and requires an independent review of the entire matter. See *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991) ("When de novo review is compelled, no form of appellate deference is acceptable.").When a party contests a magistrate judge's findings that resulted from an evidentiary hearing, the reviewing district court judge does not need to conduct another hearing. See *United States v. Raddatz*, 447 U.S. 667, 674 (1980) (holding that 28 U.S.C. § 636 "calls for a de novo determination, not a de novo hearing"). Instead, the district court discharges its duty by, at a minimum, listening to a tape recording or reading a transcript of the evidentiary hearing. See *United States v. Azure*, 539 F.3d 904, 910–11 (8th Cir. 2008). Here, the Court has read the transcript of the suppression hearing and has reviewed the exhibits admitted at the hearing.

### B. The Initial Traffic Stop and Subsequent Search of the Vehicle

The magistrate judge found that the initial stop of the defendant's vehicle was based on a traffic violation—namely, the expired registration—that provided probable cause. Filing 87 at 5 (noting that "no unregistered motor vehicle may be operated on Nebraska's highways" (citing Neb. Rev. Stat. § 60-362)). Acknowledging that "'any traffic violation, no matter how minor, is sufficient to provide an officer with probable cause' to stop a vehicle," the magistrate judge concluded that the initial traffic stop in this case was not a basis for suppression. Filing 87 at 5

5

(quoting *United States v. Gonzalez-Carmona*, 35 F.4th 636, 640 (8th Cir. 2022)). In addition, the magistrate judge concluded that "law enforcement had sufficient probable cause to search the vehicle" after "the dog alerted and indicated to the odor of narcotics." Filing 87 at 8 (citing *United States v. Bloomfield*, 40 F.3d 910, 919 (8th Cir.1994) (en banc) (subsequent history omitted)).

The defendant did not object to the magistrate judge's findings that the initial stop and later search of the vehicle were supported by probable cause and has accordingly waived any challenge to these issues. Fed. R. Crim. P. 59(b)(2). Regardless, the Court agrees with the magistrate judge that the defendant's vehicle's expired registration sufficed "to provide an officer with probable cause" to justify the initial traffic stop. *Gonzalez-Carmona*, 35 F.4th at 640. The Court acknowledges that Officer Anderson asked Officer Vaughn to find a reason to stop the defendant before discovering the expired registration. Filing 86 at 66–67, 81. This causes the Court some concern. However, it is undisputed that the officer only stopped the defendant after he had probable cause given the admitted traffic violation. *See id.* The Court also agrees with the magistrate judge's conclusion that "the positive alert by a reliable dog alone established probable cause" to conduct the later search of the defendant's vehicle. *United States v. Jackson*, 811 F.3d 1049, 1052 (8th Cir. 2016). Accordingly, neither the initial traffic stop nor the later search of the vehicle are grounds for suppression.

### C. The Defendant's Detention During the Traffic Stop

*1. The Magistrate Judge's Findings and the Defendant's Objections*

The magistrate judge found that the approximately 6-minute period of detention between the initial traffic stop and use of the drug dog was not "prolonged" but was instead "a routine traffic stop." Filing 87 at 5. The magistrate judge determined that Officer Vaughn's repetition of routine

6

questions "was not excessive and did not suggest intentional delay" but instead was reflective of Officer Vaughn's attempt to not be "robotic" in interactions with members of the public. Filing 87 at 6. The magistrate judge further found that even if the traffic stop were prolonged, Officer Vaughn had reasonable suspicion justifying prolongation. Filing 87 at 7. The magistrate judge found that multiple circumstances, including the defendant's duffel bag, food wrappers, two phones, and inconsistent statement about his travels, supported a finding of reasonable suspicion. Filing 87 at 7–8. Addressing Officer Vaughn's reference to the defendant as "homeboy," the magistrate judge acknowledged that the comment was inappropriate but found "there is no evidence showing that the defendant was stopped *because* of his race." Filing 87 at 9 (emphasis in original).

The defendant objects to the magistrate judge's finding that the stop was not prolonged, arguing "that the officer did not carefully tailor his investigation to the underlying justification lasting no longer than necessary to effectuate the purpose of the stop." Filing 92 at 18 (citing *Rodriguez v. United States*, 575 U.S. 348, 355 (2015)). The defendant also argues that Officer Vaughn lacked reasonable suspicion to prolong the stop. Filing 92 at 10. The defendant contends that Officer Vaughn committed a Fourth Amendment violation by "intentionally delay[ing] the traffic stop on numerous occasions without reasonable suspicion." Filing 92 at 10–12. The defendant attributes these delays "to ulterior motives of the officer that went beyond making sure motorists with a rental car from Colorado had an up-to-date vehicle registration while traveling on Nebraska roads." Filing 92 at 12. The defendant argues that Officer Vaughn's motivation for prolonging the defendant's detention was racial profiling. Filing 92 at 12–13.

*2. The Detention Was Not Prolonged*

The detention was not prolonged because Officer Vaughn was reasonably diligent in conducting his investigation. On this topic, the Eighth Circuit has stated,

> "[A] police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez v. United States*, 575 U.S. 348, 350, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015). *See United States v. Watts*, 7 F.3d 122, 126 (8th Cir. 1993) ("The Fourth Amendment requires that a search not continue longer than necessary to effectuate the purposes of an investigative stop."). "Whether the duration of the stop is reasonable is determined by the seizure's 'mission,' and law enforcement must be 'reasonably diligent' in carrying out that mission." *United States v. Magallon*, 984 F.3d 1263, 1278 (8th Cir. 2021), quoting *Rodriguez*, 575 U.S. at 354, 135 S.Ct. 1609. "In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *United States v. Sharpe*, 470 U.S. 675, 686, 105 S.Ct. 1568, 84 L.Ed.2d 605, (1985).

*United States v. Rederick*, 65 F.4th 961, 966 (8th Cir.), *cert. denied*, 144 S. Ct. 241, 217 L. Ed. 2d 108 (2023).

The magistrate judge properly found that the traffic stop was not prolonged. The evident "mission" of the traffic stop was to ensure that the defendant was the lawful driver of the vehicle, that he had a valid driver's license, and that there were no active warrants for his arrest. *Magallon*, 984 F.3d at 1278; *see also United States v. Strawther*, 125 F.4th 860, 865 (8th Cir. 2025) (stating that the "routine but somewhat time-consuming tasks related to a traffic violation include . . . a computerized check of the vehicle's registration and the driver's license and criminal history, as well as the preparation of a citation or warning"). The defendant challenges an approximately six-minute period of detention, which is well short of other delays that did not violate the Fourth Amendment, such as the "hour-long delay in *Magallon*" and the "27 minutes [that] passed from the stop until the dog's alert" in *Rederick*. 65 F.4th at 967. The defendant asks the Court to find a

Fourth Amendment violation where "the officer did not carefully tailor his investigation to the underlying justification" for the initial stop. Filing 92 at 18. But the law only requires that officers be "reasonably diligent" in their investigations. *Magallon*, 984 F.3d at 1278.

Officer Vaughn was "reasonably diligent" in conducting his investigation. Officer Vaughn conducted the "routine but somewhat time-consuming tasks related to a traffic violation" in a reasonably diligent manner by asking the defendant questions about his identification, criminal history, and travels. *Strawther*, 125 F.4th at 865. Asking the same question slightly differently two or three times does not render Officer Vaughn's investigation unreasonable; to the contrary, it supports Officer Vaughn's claim that he tries to not sound "robotic" in interactions with members of the public. Filing 87 at 6. Officer Vaughn "diligently pursued a means of investigation that was likely to confirm or dispel [his] suspicions quickly, during which time it was necessary to detain the defendant." *Sharpe*, 470 U.S. at 686. Because Officer Vaughn did not prolong the traffic stop, he did not need reasonable suspicion to conduct the canine sniff, and the defendant's Fourth Amendment rights were not violated. *See Rodriguez v. United States*, 575 U.S. 348, 350, 355 (2015) (providing that "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures . . . absent the reasonable suspicion ordinarily demanded to justify detaining an individual"). Therefore, the Court agrees with the magistrate judge that suppression is not appropriate.

3. *Even if the Traffic Stop Was Prolonged, Prolongation Was Supported by Reasonable Suspicion*

Even if Officer Vaughn had prolonged the defendant's detention, the Motion to Suppress would still be denied because reasonable suspicion justified any prolongation.

Prolonging a traffic stop requires reasonable suspicion. *United States v. Austin*, 104 F.4th 695, 699 (8th Cir. 2024) ("Once an officer finishes the tasks associated with a traffic stop, it is unreasonable to further detain the vehicle's occupants unless something occurs during the stop to generate reasonable suspicion to justify the further detention."). The Eighth Circuit has explained what is demanded by "reasonable suspicion," as follows:

> "Reasonable suspicion requires 'specific and articulable facts which, taken together with rational inferences from those facts, amount to reasonable suspicion that further investigation is warranted.'" *United States v. Gonzalez-Carmona*, 35 F.4th [636,] 641 [(8th Cir. 2022)] (citation omitted). This concept is "not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Accordingly, our review of reasonable suspicion "looks to the totality of the circumstances, 'allow[ing] officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them.'" *United States v. Dortch*, 868 F.3d 674, 680 (8th Cir. 2017) (alteration in original) (quoting *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)). Still, we view the totality of the circumstances not from an individual officer's subjective standpoint, but from the standpoint of an objectively reasonable officer. *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

*United States v. Betts*, 88 F.4th 769, 773–74 (8th Cir. 2023) (alterations in original).

The magistrate judge properly analyzed the totality of the circumstances before concluding that Officer Vaughn had reasonable suspicion to prolong the defendant's detention. Filing 87 at 7. Numerous circumstances justified Officer Vaughn's suspicion that the defendant was engaged in criminal conduct. Officer Vaughn reasonably concluded that the defendant lied when he said he was coming from the outlet mall. Based on where Officer Anderson initially spotted the defendant, the defendant must have driven past the outlet mall on the highway, meaning his origin was further

to the west.[3] In addition, the presence of a duffle bag and various fast food wrappers in the vehicle also indicated the defendant had engaged in lengthy travel, contrary to the defendant's statements. "Contradictory statements establish the reasonable suspicion necessary to detain a motorist further and to interview passengers." *United States v. Pulliam*, 265 F.3d 736, 740 (8th Cir. 2001) (citing *United States v. Edmisten*, 208 F.3d 693, 694 (8th Cir. 2000)). Compounding Officer Vaughn's suspicions include the fact that the defendant, an Omaha native and resident, would use a rental car for purportedly local travel. Officer Anderson testified that criminals sometimes use rental vehicles to traffic contraband because they tend to be "reliable" and are not "subject to forfeiture laws." Filing 86 at 66. Further, Officer Vaughn observed the defendant in possession of two phones and testified to his knowledge that "people involved in criminal activity will use multiple cell phones." Filing 86 at 21. Under the totality of the circumstances, Officer Vaughn was reasonably suspicious that the defendant was engaged in criminal activity. Thus, if the traffic stop was prolonged, it was lawfully done.

The defendant's chief argument against reasonable suspicion is that the defendant's detention was due to racial profiling. This argument has already been squarely addressed and

---

[3] In his objections, the defendant disputes that his statement was false and argues this consideration does not support probable cause. The defendant first reasons that he could have been referring to a different outlet mall in Lincoln, Nebraska, about 40 miles west of the traffic stop. Filing 92 at 21. The defendant further argues that he could have initially travelled the wrong way (west) on I-80 before realizing his error, then exited and reentered the highway heading east, where he passed Officer Anderson. Filing 92 at 21. Neither argument is persuasive. Given the proximity of these events to "the Gretna outlet malls," it was reasonable for Officer Vaughn to determine that the defendant's general reference to "the outlet mall" referred to the nearby location. It was also reasonable for Officer Vaughn to assume that someone who "was born and raised in Omaha," such as the defendant, would not drive in the wrong direction on the highway. Filing 92 at 7. The defendant's convenient explanations as to his "outlet mall" comment do not nullify the reasonable suspicion he had regarding the defendant. Officer Vaughn's inquiry into this matter was sufficiently "likely to confirm or dispel [his] suspicions quickly, during which time it was necessary to detain the defendant." *United States v. Sharpe*, 470 U.S. 675, 686 (1985). Thus, Officer Vaughn discharged his duty of "reasonabl[e] diligen[ce]," *United States v. Magallon*, 984 F.3d 1263, 1278 (8th Cir. 2021), and the defendant's apparent lie about his origin contributed to Officer Vaughn's reasonable suspicion.

foreclosed by the Eighth Circuit in *United States v. Gomez Serena*, 368 F.3d 1037, 1041 (8th Cir. 2004). In that case, the Eighth Circuit stated,

> Serena argues that Officer Olson had no more than a mere generalized suspicion of criminal activity based solely upon Serena's race when Olson prolonged the traffic stop. Specifically, Serena contends that he was detained because of his Hispanic descent, his shaved head, and the tattoo across the back of his scalp.
>
> We find this argument unpersuasive. The United States Supreme Court holds that a traffic stop is constitutional, no matter the officer's subjective intent, so long as the officer had probable cause to believe that a traffic violation occurred. *Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). As noted above, and as Serena concedes, Officer Olson had a reasonable and articulable suspicion that a traffic violation had occurred. *United States v. Herrera Martinez*, 354 F.3d 932, 934 (8th Cir.2004). Also, the officer based his additional detention of Serena upon reasonable suspicions that developed during the stop. Serena has not shown that Officer Olson detained him solely on account of his race.

*Gomez Serena*, 368 F.3d at 1041.

The same is true in this case. Officer Vaughn "had a reasonable and articulable suspicion that a traffic violation had occurred." *Id.* Officer Vaughn "based his additional detention of [the defendant] upon reasonable suspicions that developed during the stop," as discussed above. *Id.* Finally, the defendant "has not shown that Officer [Vaughn] detained him solely on account of his race." *Id.*[4] To the contrary, Officer Vaughn initially pulled over the defendant for a traffic violation, discovered additional circumstances that gave reasonable suspicion of criminal activity while the

---

[4] Officer Vaughn's reference to the defendant as "homeboy" was inappropriate. However, Officer Vaughn testified that race was not a factor in stopping or detaining the defendant, Filing 86 at 55, and the magistrate judge credited this testimony, Filing 87 at 9. After de novo review, the Court agrees that this testimony was credible. *See United States v. Benitez*, 244 F.App'x 64, 66 (8th Cir. 2007) ("When the magistrate judge's report is based upon an evidentiary hearing, [de novo] review requires the district court to, at a minimum, listen to the tape of the hearing or read the hearing transcript."). Thus, the Court adopts this factual finding. *See United States v. Mitchell*, 55 F.4th 620, 622 (8th Cir. 2022) ("A credibility finding made by a magistrate judge after a hearing on the merits of a motion to suppress is virtually unassailable on appeal." (citation and internal quotation marks omitted)); *see also United States v. Syslo*, 303 F.3d 860, 869 n.5 (8th Cir. 2002) ("The magistrate judge's factual findings speak for themselves, and, to the extent they were adopted by the district court, they must be accepted as true on appeal absent clear error.") (internal citation omitted).

defendant was detained, then searched the defendant's vehicle because a canine sniff positively identified the presence of narcotics. Suppression is not warranted.

### III. CONCLUSION

For these reasons, and upon *de novo* review, the Court agrees with the findings and recommendation reached by the magistrate judge that suppression is not warranted in this case. The initial traffic stop and later search of the vehicle were supported by probable cause. The defendant's detention during the traffic stop was not prolonged, but even if it was, prolongation was supported by reasonable suspicion and therefore lawful. The defendant has waived any other objections. Accordingly,

IT IS ORDERED:

1. The defendant's objections to the Findings and Recommendation, Filing 94, are overruled;

2. The United States Magistrate Judge's Findings and Recommendation, Filing 87, is accepted; and

3. The defendant's Motion to Suppress, Filing 44, is denied.

Dated this 20th day of March, 2025.

BY THE COURT:

Brian C. Buescher
United States District Judge

13